IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
December 19, 2017 Session

## STATE OF TENNESSE v. MICHAEL EUGENE TOLLE

**Appeal from the Criminal Court for Knox County**
**No. 100047      Bob McGee, Judge**

_____

### No. E2017-00571-CCA-R3-CD
_____

In this appeal, the State challenges the trial court's decision to apply the amended version of Code section 39-14-105, which provides the grading of theft offenses, to modify the class of the defendant's conviction offense and the corresponding sentence following the revocation of the defendant's probation. No appeal right lies for the State pursuant to either Tennessee Rule of Appellate Procedure 3, Code section 40-35-402, or Tennessee Rule of Criminal Procedure 35 under the circumstances in this case. Because we have concluded that the trial court exceeded its authority by the application of the amended version of Code section 39-14-105, however, we have elected to treat the improperly-filed appeal as a petition for the common law writ of certiorari. Accordingly, we vacate the order of the trial court and remand the case for proceedings consistent with this opinion.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Vacated and Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Charme P. Allen, District Attorney General; and Ashley McDermott, Assistant District Attorney General, for the appellant, State of Tennessee.

Mark Stephens, District Public Defender; and Jonathan Hartwell (on appeal) and Christy Murray (at hearing), Assistant District Public Defenders, for the appellee, Michael Eugene Tolle.

**OPINION**

On August 8, 2012, the defendant pleaded guilty to one count of theft of property valued at more than $500 but less than $1,000 and one count of theft of property valued at $500 or less. In keeping with the defendant's plea agreement with the State, the trial court imposed concurrent sentences of two years and 11 months and 29 days, respectively, to be served in the Tennessee Department of Correction ("TDOC"). The trial court also applied 61 days' pretrial jail credit.[1] On December 22, 2012, TDOC placed the defendant on determinate release, *see* T.C.A. § 40-35-501(a)(3) (2006) ("Notwithstanding any other provision of law, inmates with felony sentences of two (2) years or less shall have the remainder of their original sentence suspended upon reaching their release eligibility date."), with a probation expiration date of May 9, 2014.[2]

A probation violation warrant issued on June 7, 2013, alleging that the defendant had violated the terms of his release by failing to inform his probation officer before changing his address, failing to allow a home visit by his probation officer, failing to report as required, and failing to pay probation supervision fees in an amount of $225. According to the defendant, he was taken into custody by the South Carolina Department of Corrections ("SCDC") on May 7, 2014, and remained in SCDC custody until December 23, 2016, when he returned to Jefferson County, Tennessee, pursuant to a detainer warrant to answer charges of burglary and theft, both Class D felonies. The defendant pleaded guilty to the Jefferson County charges in exchange for a three-year sentence, and the Jefferson County Criminal Court granted the defendant credit for the time he served in SCDC.

Following the entry of his pleas in Jefferson County, the defendant was transferred to Knox County to answer the violation warrant in this case. The defendant moved to dismiss the warrant arguing that the State's failure to prosecute the warrant while he was incarcerated in SCDC violated his right to a speedy trial and deprived him of the opportunity to earn credit against the sentence in this case while serving his SCDC sentence. The defendant also asked that, because the legislature amended Code section 39-14-105, the theft grading statute, effective January 1, 2017, the trial court should reduce the conviction class of his conviction of theft of property valued at more than $500 but less than $1,000 from a Class E felony to a Class A misdemeanor as provided by amended Code section 39-14-105. The defendant argued that the terms of Code section 39-11-112 entitled him to the more lenient penalty provided by the amendment.

---

[1] The defendant received credit for the periods between June 6, 2012, and June 15, 2012, and between June 16, 2012, and August 7, 2012.

[2] The order placing the defendant on determinate release is not included in the record on appeal. We glean these facts from the probation revocation order.

The defendant also asked the trial court to grant him credit for the time he was incarcerated in SCDC.

The State opposed the defendant's motion, arguing that no speedy trial violation had occurred and that the defendant was entitled to neither the more lenient sentence provided by amended Code section 39-14-105 nor credit for the time he spent incarcerated in SCDC.

At the February 23, 2017 revocation hearing, the defendant acknowledged that he violated the terms of his probationary sentence but argued that the warrant should be dismissed because the State failed to timely prosecute in violation of his constitutional right to a speedy trial. The defendant also argued that, should the trial court deny the motion to dismiss, he should be "resentence[d] . . . consistent with the change in law with theft offenses." The defendant asserted that the trial court had the authority to resentence the defendant under the terms of Tennessee Rule of Criminal Procedure 35 "which allows the reduction of a sentence . . . within 120 days after . . . probation is revoked which is what we have here." Arguing that Code section 39-11-112, the criminal savings statute, entitled him to the more lenient sentence, the defendant asked that his conviction offense of theft of property valued at more than $500 but less than $1,000 be reclassified as a Class A misdemeanor consistent with amended Code section 39-14-105.

The State argued that no speedy trial violation had occurred because it was the defendant's action in acquiring criminal convictions in another state that caused the delay in this case. The State asserted that the defendant was not entitled to resentencing consistent with the new theft grading statute because Code section 39-11-112 had no application following a probation revocation.

The trial court rejected the defendant's speedy trial claim on grounds that "there cannot be a violation of speedy trial right because there's no trial pending." The trial court also found that the State of Tennessee was under no obligation "to leap into action simply because [the defendant] commits crimes in other states and picks up other sentences." The trial court found that the defendant violated the terms of his probation "by picking up the crimes in another state and by being convicted and serving his sentence."[3] The court denied the defendant's request for credit for time served in SCDC toward the sentence in this case. With regard to the defendant's request for a sentence reduction, the trial court found:

---

[3] These were not the grounds alleged in the violation warrant. Because the defendant did not object to the use of a basis for revocation that might be construed as beyond the notice given, and because he presented no lack-of-notice argument to the trial court or on appeal to this court, he has waived any claim that he received no notice of the grounds for revocation. *Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980).

The Court is under no obligation to resentence him and would be well within its rights to simply impose the original sentence [of] two years and remand him. However, it is true that our legislature has in more recent times decided that the proper penalty for this offense would be 11 months, 29 days.

So in the spirit of complying with the wishes of the legislature, the contemporary . . . legislature, this Court will resentence him to 11 months and 29 days in the custody of the Knox County Sheriff's Department and a service rate of 75 percent. The Court orders that he receive credit for the time he served in the Tennessee jail, Knox County jails on these offenses.

The trial court reiterated its holdings in a written order.[4]

The State appealed "pursuant to Tenn. Code Ann. § 40-35-402" the trial court's decision to resentence the defendant under the amended version of Code section 39-14-105. The defendant did not appeal.

## I. Jurisdiction

As in any other appeal before this court, our first concern is whether this court is authorized to hear the case. The State initiated the appeal in this case by filing a notice of appeal "pursuant to Code section 40-35-402." That statute provides the State the right to appeal certain sentencing decisions of the trial court "within the same time and in the same manner as other appeals in criminal cases":

(a) The district attorney general in a criminal case may appeal from the length, range or manner of the service of the sentence imposed by the sentencing court. The district attorney general may also appeal the imposition of concurrent sentences. In addition, the district attorney general may also appeal the amount of fines and restitution imposed by the sentencing court. An appeal pursuant to this section shall be taken within the same time and in the same manner as other appeals in criminal cases. The right of the appeal of the state

---

[4]     The record does not indicate whether the trial court entered an amended judgment form reflecting the modified class of the conviction offense and the corresponding sentence of 11 months and 29 days.

is independent of the defendant's right of appeal.

(b) An appeal from a sentence is limited to one (1) or more of the following conditions:

(1) The court improperly sentenced the defendant to the wrong sentence range;
(2) The court granted all or part of the sentence on probation;
(3) The court ordered all or part of the sentences to run concurrently;
(4) The court improperly found the defendant to be an especially mitigated offender;
(5) The court failed to impose the fines recommended by the jury;
(6) The court failed to order the defendant to make reasonable restitution; or
(7) The sentence is inconsistent with the purposes or considerations of sentencing set out in §§ 40-35-102 and 40-35-103.

§ 40-35-402(a)-(b).

"When a statute affords a state or the United States the right to an appeal in a criminal proceeding, the statute will be strictly construed to apply only to the circumstances defined in the statute." *State v. Meeks*, 262 S.W.3d 710, 718 (Tenn. 2008) (citing *Carroll v. United States*, 354 U.S. 394, 400 (1957); *State v. Adler*, 92 S.W.3d 397, 400 (Tenn. 2002)). As our supreme court explained, at common law the State had no right to appeal in a criminal case under any circumstances. *Meeks*, 262 S.W.3d at 718. Later, many state legislatures and Congress granted to the prosecution limited rights of appeal via specific constitutional or statutory provisions. *See United States v. Sanges*, 144 U.S. 310, 312 (1892) ("[T]he State has no right to sue out a writ of error upon a judgment in favor of the defendant in a criminal case, except under and in accordance with express statutes, whether that judgment was rendered upon a verdict of acquittal, or upon the determination by the court of a question of law."); *see also United States v. Martin Linen Supply Co.*, 430 U.S. 564, 568 (1977); *United States v. Wilson*, 420 U.S. 332, 336 (1975). Even where the right of appeal was granted to the prosecution, courts continued to emphasize that such provisions must be construed or applied narrowly to avoid a general grant of jurisdiction for state appeals. *Meeks* 262 S.W.3d at 718; *see also Arizona v. Manypenny*, 451 U.S. 232, 246 (1981); *State v. Reynolds*, 5 Tenn. 110, 111 (Tenn. 1817) ("It is our duty as faithful expositors of the law, to preserve it from all encroachment by implication or construction, for in so doing we guard the honor and the

peace of our countrymen."). Indeed, "'appeals by the Government in criminal cases are something unusual, exceptional, not favored,' at least in part because they always threaten to offend the policies behind the double-jeopardy prohibition." *Will v. United States*, 389 U.S. 90, 96 (1967) (quoting *Carroll*, 354 U.S. at 400). "Both prudential and constitutional interests contributed to this tradition. The need to restrict appeals by the prosecutor reflected a prudential concern that individuals should be free from the harassment and vexation of unbounded litigation by the sovereign." *Manypenny*, 451 U.S. at 245. When construing the right of the State to appeal in a criminal case, reviewing courts must do so with an understanding that the granting authority, the legislature, "clearly contemplated . . . that [the prosecution] would be completely unable to secure review of some orders having a substantial effect on its ability to secure criminal convictions." *Will*, 389 U.S. at 98 n.5.

With these considerations in mind, we turn to the question whether any portion of the State's appeal in this case fits any of the bases for appeal enunciated in Code section 40-35-402.

The State argues that the trial court's erroneous application of amended Code section 39-14-105 caused the court to impose a sentence within the wrong sentencing range, thus giving rise to an appeal as of right under Code section 40-35-402(b)(1). The State's reliance on Code section 40-35-402(b)(1), however, is inapt. The amendment to Code section 39-14-105 altered only the relationship between the value of property taken during a theft and the class of the resulting offense. The amendment did not alter the law setting sentencing ranges. Sentencing range and offense class are not the same thing. Both offenses, *see* T.C.A. § 40-35-110, and offenders, *see id.* § 40-35-105 to -109, are classified by the legislature, and the Code then provides a corresponding range of punishment for each combination of offense and offender class. *See id.* § 40-35-112. "[W]hen interpreting statutes," this court follows "the Latin maxim of *expressio unius est exclusio alterius*, meaning 'the expression of one thing implies the exclusion of all things not mentioned.'" *Adler*, 92 S.W.3d at 400 (quoting *Limbaugh v. Coffee Med. Center*, 59 S.W.3d 73, 84 (Tenn. 2001)). The question in this case is not the appropriate range classification but whether the defendant's conviction of theft of property valued at more than $500 but less than $1,000 should be classified as a Class E felony, pursuant to the law in effect at the time of the crime, or a Class A misdemeanor, pursuant to amended Code section 39-14-105. Because Code section 40-35-402 does not provide the State the right to appeal the offense classification, the trial court's resolution of this question, regardless whether it was correct, does not avail the State of a statutory right to appeal under the terms of Code section 40-35-402. Construing this statutory grant of a State appeal narrowly, as we are compelled to do, we conclude that Code section 40-35-402 does not provide the State the right to appeal the trial court's decision in this case.

Similarly, Rule 3 of the Tennessee Rules of Appellate Procedure provides a right of appeal to the State in limited circumstances:

> In criminal actions an appeal as of right by the [S]tate lies only from an order or judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Criminal Appeals: (1) the substantive effect of which results in dismissing an indictment, information, or complaint; (2) setting aside a verdict of guilty and entering a judgment of acquittal; (3) arresting judgment; (4) granting or refusing to revoke probation; or (5) remanding a child to the juvenile court. The [S]tate may also appeal as of right from a final judgment in a habeas corpus, extradition, or post-conviction proceeding.

Tenn. R. App. P. 3(c). The trial court's ruling in this case did not have "the substantive effect of . . . dismissing an indictment, information, or complaint," did not set aside the verdict of the jury, did not arrest the judgment, and did not "remand[] a child to the juvenile court." Rule 3(c) does permit the State to appeal the trial court's order "granting or refusing to revoke probation," but the grant or refusal to revoke probation is not the subject of the State's appeal in this case. Tennessee Rule of Appellate Procedure 3(c) does not provide the State an appeal as of right from the decision to revoke probation. Additionally, this case does not arise from "a final judgment in a habeas corpus, extradition, or post-conviction proceeding." Because the State's claim on appeal does not fit any of the categories provided in Rule 3(c), the State has no stand-alone appeal as of right pursuant to Tennessee Rule of Appellate Procedure 3.

During the revocation hearing, the defendant argued that Tennessee Rule of Criminal Procedure 35 granted the trial court authority to reduce his sentence following the revocation of his probation. That rule provides:

> (a) Timing of Motion. The trial court may reduce a sentence upon motion filed within 120 days after the date the sentence is imposed or probation is revoked. No extensions shall be allowed on the time limitation. No other actions toll the running of this time limitation.
>
> (b) Limits of Sentence Modification. The court may reduce a sentence only to one the court could have originally imposed.
>
> (c) Hearing Unnecessary. The trial court may deny a motion

> for reduction of sentence under this rule without a hearing.
>
> (d) Appeal. The defendant may appeal the denial of a motion for reduction of sentence but shall not be entitled to release on bond unless already under bond. If the court modifies the sentence, the state may appeal as otherwise provided by law.

Tenn. R. Crim. P. 35. Although the trial court reduced the defendant's sentence, the record does not clearly establish that the court did so under the color of authority granted by Rule 35. Indeed, the State argues that Rule 35 has no application because the defendant did not file a written motion for relief under Rule 35.[5] Moreover, although Rule 35 does permit the trial court to reduce the defendant's sentence within 120 days of a probation revocation, the rule limits the sentence reduction "to one the court could have originally imposed." Tenn. R. Crim. P. 35(b); *see also* Tenn. R. Crim. P. 35, Advisory Comm'n Comm't. ("The modification permitted by this rule is any modification otherwise permitted by the law when the judge originally imposed sentence including but not limited to a transfer to the workhouse or probation to otherwise eligible defendants. If there is a modification, the [S]tate may appeal."). In this way, any "action of the trial court on the Rule 35 motion relates back to the date of sentencing . . . so as to require any modification to comply with the law existing as of that date." *State v. Bilbrey*, 816 S.W.2d 71, 76 (Tenn. Crim. App. 1991).

When the defendant was originally sentenced in 2012, theft of property valued at more than $500 but less than $1,000 was a Class E felony punishable by a sentence of no less than one nor more than two years. *See* T.C.A. § 39-14-105 (2012); *id.* § 40-35-112 ("A Range I sentence is [f]or a Class E felony, not less than one (1) nor more than two (2) years."). Because Rule 35 provided the trial court no authority to change the conviction class of the offense or to reduce the defendant's sentence to a term less than that available at the time of the original sentencing in this case and especially because the record does not clearly establish that the trial court was acting under the color of the authority granted by Rule 35, we will not consider the appeal in this case as an appeal provided by that rule.

This court may, under certain circumstances, treat an improperly filed appeal as an extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure. *See State v. Norris*, 47 S.W.3d 457, 463 (Tenn. Crim. App. 2000); *State v. Leath*, 977 S.W.2d 132, 135 (Tenn. Crim. App. 1998). Rule 10 provides:

---

[5] Although we need not decide in this case whether Rule 35 requires the filing of a written motion, we have no doubt that filing a written motion is the best practice, particularly given the strict time limitation in Rule 35.

An extraordinary appeal may be sought on application and in the discretion of the appellate court alone of interlocutory orders of a lower court from which an appeal lies to the Supreme Court, Court of Appeals or Court of Criminal Appeals: (1) if the lower court has so far departed from the accepted and usual course of judicial proceedings as to require immediate review, or (2) if necessary for complete determination of the action on appeal as otherwise provided in these rules. The appellate court may issue whatever order is necessary to implement review under this rule.

Tenn. R. App. P. 10(a). Before this court will grant an extraordinary appeal, however, the appellant must establish that: (a) "the ruling of the court below represents a fundamental illegality," (b) "the ruling constitutes a failure to proceed according to the essential requirements of the law," (c) "the ruling is tantamount to the denial of either party of a day in court," (d) "the action of the trial judge was without legal authority," (e) "the action of the trial judge constituted a plain and palpable abuse of discretion," or (f) "either party has lost a right or interest that may never be recaptured." *State v. Willoughby*, 594 S.W.2d 388, 392 (Tenn. 1980) (finding that the principles required for the common law writ of certiorari are applicable to applications for extraordinary appeal under Rule 10). Application of Rule 10 in this case is inappropriate, however, because the State appeals from the final judgment of the trial court. The plain language of Rule 10 limits its application to the "interlocutory orders" of the trial court.

Where there is no statutory or rule-based appeal as of right, this court may treat the State's improperly filed appeal as of right as a petition for the common-law writ of certiorari. "The common-law writ of certiorari is 'of ancient origin and has been characterized as extraordinary, remedial, revisory, supervisory, and prerogative.'" *State v. Lane*, 254 S.W.3d 349, 354 (Tenn. 2008) (quoting *State v. Johnson*, 569 S.W.2d 808, 812 (Tenn. 1978); *Tenn. Cent. R.R. v. Campbell*, 75 S.W. 1012 (Tenn. 1903)). "A writ of certiorari is an order from a superior court to an inferior tribunal to send up a complete record for review, so that the reviewing court can ascertain whether the inferior tribunal has exceeded its jurisdiction or acted illegally, fraudulently, or arbitrarily." *Lane*, 254 S.W.3d at 354 (citations omitted). An extremely limited avenue of relief, the writ of certiorari is available "to correct '(1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's authority; and (5) plain and palpable abuses of discretion.'" *Lane*, 254 S.W.3d at 355 (quoting *Willis v. Tenn. Dep't Corr.*, 113 S.W.3d 706, 712 (Tenn. 2002)). The writ may also lie "'[w]here either party has lost a right or interest that may never be recaptured.'" *Id.* (quoting *Johnson*, 569 S.W.2d at 815)). "[R]eviewing courts should not grant a petition for a

common-law writ of certiorari to '(1) inquire into the intrinsic correctness of the lower tribunal's decision, (2) reweigh the evidence, or (3) substitute their judgment for that of the lower tribunal.'" *Lane*, 254 S.W.3d at 355 (quoting *Robinson v. Clement*, 65 S.W.3d 632, 635 (Tenn. Ct. App. 2001) (internal citations omitted)).

A statutory provision for review by the writ of certiorari is codified at Tennessee Code Annotated section 27-8-101:

> The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy. This section does not apply to actions governed by the Tennessee Rules of Appellate Procedure.

T.C.A. § 27-8-101. Although a provision for a writ of certiorari has been codified, our case law is clear that "[t]he writ of certiorari does not owe its existence to constitutional provision or statutory enactment. It is a common-law writ, of ancient origin, and one of the most valuable and efficient remedies which come to us with that admirable system of jurisprudence." *Tenn. Cent. R.R.*, 75 S.W. at 1012; *see also State v. L.W.*, 350 S.W.3d 911, 915 (Tenn. 2011). "The inclusion of a provision in our original constitution for writs of certiorari, Tenn. Const. art. VI, §§ 6-7 (1796), was to guarantee the availability of the writ in civil cases, as opposed to the previously exclusive use of the writ in criminal cases." *L.W.*, 350 S.W.3d at 915 (citing *Tenn. Cent. R.R.*, 75 S.W. at 1012-13). Thus, the procedural requirements for filing a petition for writ of certiorari in a civil case are inapplicable "on petitions for writs of certiorari in criminal cases." *L.W.*, 350 S.W.3d at 916.

In this case, the trial court's ruling is not fundamentally illegal and does not amount to a "plain and palpable" abuse of the court's discretion. Additionally, because the trial court held a hearing on the issue at which both parties were allowed to fully participate, the proceedings were not "inconsistent with essential legal requirements" and did not deny either party a "day in court," and neither party "lost a right or interest that may never be recaptured". Because the trial court's application of amended Code section 39-14-105 to the defendant's case and the resulting modification of the defendant's sentence exceeded the court's authority, as will be discussed more fully below, we have elected to treat the State's improperly-filed appeal as of right as a petition for the common law writ of certiorari.

*II. Applicability of Amended Code section 39-14-105*

The State contends that the trial court erred by concluding that Code section 39-11-112 entitled the defendant to the lesser sentence provided for by the 2016 amendment to Code section 39-14-105 because the amendment was not a sentencing provision and because, in any event, nothing authorized the trial court to resentence the defendant following the revocation of his probation. The defendant asserts that the trial court did not err.

Because our determination of the propriety of the trial court's ruling depends upon our interpretation of the various statutes and rules at play, our review is de novo with no presumption of correctness afforded to the ruling of the trial court. *See, e.g.*, *State v. Howard*, 504 S.W.3d 260, 267 (Tenn. 2016).

The most basic principle of statutory construction is "'to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope.'" *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002) (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)). "Legislative intent is determined 'from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning.'" *Osborn v. Marr*, 127 S.W.3d 737, 740 (Tenn. 2004) (quoting *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000)). "When the statutory language is clear and unambiguous, we apply the plain language in its normal and accepted use." *Boarman v. Jaynes*, 109 S.W.3d 286, 291 (Tenn. 2003) (citing *State v. Nelson*, 23 S.W.3d 270, 271 (Tenn. 2000)). "It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources." *In re Estate of Davis*, 308 S.W.3d 832, 837 (Tenn. 2010) (citing *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998)).

On April 27, 2016, the governor signed into law a bill designated by the legislature as the Public Safety Act of 2016 ("the Act"). The Act amends the law for the issuance of orders of protection; alters the penalty for a third or subsequent conviction of domestic assault; adds "the results of an offender's validated risk and needs assessment" to the list of factors that the trial court must consider during sentencing; adds a new category of offenses that come with an 85 percent release eligibility percentage; adds a new section to Title 40, Chapter 28 that creates a graduated system of sanctions for violating a sentence involving release into the community; and amends Code section 39-14-105 by modifying the grading of theft offenses. 2016 Pub. Acts, c. 906. As is relevant to this case, the Act provides:

Tennessee Code Annotated, Section 39-14-105(a), is amended by deleting the subsection in its entirety and substituting instead the following language:

(a) Theft of property or services is:

(1) A Class A misdemeanor if the value of the property or services obtained is one thousand dollars ($1,000) or less;

(2) A Class E felony if the value of the property or services obtained is more than one thousand dollars ($1,000) but less than two thousand five hundred dollars ($2,500);

(3) A Class D felony if the value of the property or services obtained is two thousand five hundred dollars ($2,500) or more but less than ten thousand dollars ($10,000);

(4) A Class C felony if the value of the property or services obtained is ten thousand dollars ($10,000) or more but less than sixty thousand dollars ($60,000);

(5) A Class B felony if the value of the property or services obtained is sixty thousand dollars ($60,000) or more but less than two hundred fifty thousand dollars ($250,000); and

(6) A Class A felony if the value of the property or services obtained is two hundred fifty thousand dollars ($250,000) or more.

2016 Pub. Acts, c. 906, § 5. The Act provides two different effective dates:

For the purpose of promulgating rules, policies, forms, and procedures and making necessary provisions for the implementation of this act, this act shall take effect upon becoming a law, the public welfare requiring it. For all other purposes, this act shall take effect January 1, 2017, the public welfare requiring it.

*Id.*, § 17. Because the amendment to Code section 39-14-105 does not affect the "promulgating [of] rules, policies, forms, and procedures and making necessary provisions for the implementation of this act," the January 1, 2017 effective date applies.

"Generally, a criminal offender must be sentenced pursuant to the statute in effect at the time of the offense." *State v. Smith*, 893 S.W.2d 908, 919 (Tenn. 1994) (citing *State v. Reed*, 689 S.W.2d 190, 196 (Tenn. Crim. App. 1984); 24 C.J.S. Criminal Law, § 1462 (1989)). Code section 39-11-112, however, provides an exception to this general rule:

> When a penal statute or penal legislative act of the state is repealed or amended by a subsequent legislative act, the offense, as defined by the statute or act being repealed or amended, committed while the statute or act was in full force and effect shall be prosecuted under the act or statute in effect at the time of the commission of the offense. *Except as provided under § 40-35-117, in the event the subsequent act provides for a lesser penalty, any punishment imposed shall be in accordance with the subsequent act.*

T.C.A. § 39-11-112 (emphasis added). As our supreme court has explained, "the general provisions of § 39-11-112 and the principles against retroactive application of statutes mandate that an offense committed under a repealed or amended law shall be prosecuted under that law, unless the new law provides for a lesser penalty." *State v. Cauthern*, 967 S.W.2d 726, 747 (Tenn. 1998) (citing *Smith*, 893 S.W.2d at 919; *State v. Brimmer*, 876 S.W.2d 75, 82 (Tenn. 1994)).

Against this backdrop, we must determine whether the exception embodied in Code section 39-11-112 applies to amended Code section 39-14-105 and whether, if it does apply, Code section 39-11-112 entitles the defendant to the lesser sentence provided by the statutory amendment even though the sentence modification in this case came about following the revocation of the defendant's probation.

The State first argues that the exception in Code section 39-11-112 has no application in this case because Code section 39-14-105, in any form, is not a sentencing statute. We disagree. Code section 39-14-105 "provides the *punishment* for the offenses of theft. These offenses are *punished* according to the value of the property or services obtained." T.C.A. § 39-14-105, Sentencing Comm'n Comm't (emphasis added). In 1989, the legislature replaced the common law offenses of "embezzlement, false pretense, fraudulent conversion, larceny, receiving or concealing stolen property, and other similar offenses," *id.* § 39-14-101, into a "new generic offense of theft," *id.* § 39-14-101, Sentencing Comm'n Comm't; *see also id.* § 39-14-101 ("Conduct denominated as theft in this part constitutes a single offense . . . ."). Code section 39-14-103 provides the elements of the generic theft offense: "A person commits theft of property if, with

intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103(a). Property is defined as "anything of value, including, but not limited to, money, real estate, tangible or intangible personal property, including anything severed from land, library material, contract rights, choses-in-action, interests in or claims to wealth, credit, admission or transportation tickets, captured or domestic animals, food and drink, electric or other power." *Id.* § 39-11-106. In most theft cases,

> "Value":
>
> (A) Subject to the additional criteria of subdivisions (a)(36)(B)-(D), "value" under this title means:
>
>> (i) The fair market value of the property or service at the time and place of the offense; or
>>
>> (ii) If the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense;
>>
>> . . . .
>
> (C) If property or service has value that cannot be ascertained by the criteria set forth in subdivisions (a)(36)(A) and (B), the property or service is deemed to have a value of less than fifty dollars ($50.00);

*Id.* § 39-11-106(36)(A),(C). By applying these statutes, we see that so long as the State establishes that the defendant deprived the owner of "property," it will necessarily have established that the defendant took a thing of value and vice versa. "Nothing in [Code section] 39-14-103 which defines the offense of theft requires the [S]tate to prove the specific value of the property taken. Rather, the [S]tate merely has to introduce evidence from which a jury could conclude that the property has some value." *State v. Hill*, 856 S.W.2d 155, 156 (Tenn. Crim. App. 1993) (*Baldwin v. State*, 33 Tenn. (1 Sneed) 411 (1853)); *see also State v. Charles Cox*, No. W2010-00129-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App., Jackson, Dec. 13, 2010) ("While the [S]tate did not present evidence regarding the value of the items, the jury was free to infer that the items had some value, which is sufficient to sustain the misdemeanor theft of property conviction.").

When the State establishes a specific value for the property taken, Code section 39-14-105 supplies a *penalty* to be imposed that is commensurate with the value

-14-

as established by the evidence. When the State fails, or elects not, to present proof of specific value, the Code provides a default value of less than $50. Consequently, the specific value of the property taken is not an element of the generic theft offense.[6]

Because Code section 39-14-105 provides the penalty for theft based upon the value of the property taken, any amendment to that statute that lessens the penalty falls squarely within the "exception" to Code section 39-11-112. The amendment at issue in this case does exactly that. As is applicable in this case, the amendment provides that the theft of property valued at more than $500 but less than $1,000, the value as alleged by the State, is now a Class A misdemeanor rather than a Class E felony. Clearly, the new act provides for a lesser penalty than the previous act.

Having determined that Code section 39-11-112 is generally applicable to amended Code section 39-14-105, we must next determine whether the Act can be applied in the defendant's case even though he was resentenced following the revocation of his probation. The State argues that it cannot. The defendant, of course, contends that it can. We agree with the State.

Unlike the "revocation of a community corrections sentence," when "the trial court exercises the same discretion in resentencing as did the initial sentencing court," *Carpenter v. State*, 136 S.W.3d 608, 612 (Tenn. 2004) (citing T.C.A. § 40-36-106(e)(2), (e)(4) (2003)), the options of the trial court are limited following the revocation of probation. *See State v. Bowling*, 958 S.W.2d 362, 363 (Tenn. Crim. App. 1997). Upon revoking a sentence of probation, "a trial court can: (1) order incarceration; (2) cause execution of the judgment as it was originally entered; or (3) extend the remaining probationary period for a period not to exceed two years." *State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999). When the trial court revokes a defendant's probation, any action it takes thereafter relates back to the sentence previously imposed. Code section 39-11-112 "has never been interpreted to apply to convictions and sentences which were already received when a subsequent act or amendment provided for a lesser penalty." *State ex rel. Stewart v. McWherter*, 857 S.W.2d 875, 877 (Tenn. Crim. App. 1992) (citing T.C.A. § 1-3-101; *Stinson v. State*, 344 S.W.2d 369 (Tenn. 1961)).

---

[6]  We also observe that the gravamen of the Public Safety Act of 2016 is the amendment of various sentencing provisions and that the legislature identifies the subject of HB2576, which became the Public Safety Act of 2016, as "sentencing." *See* Tennessee House Journal, 2016 Reg. Sess. No. 33 ("*House Bill No. 2576 -- Sentencing - As introduced, enacts the 'Public Safety Act of 2016.' - Amends TCA Title 36, Chapter 3, Part 6; Title 39, Chapter 13, Part 1; Title 39, Chapter 14, Part 1; Title 40, Chapter 28; Title 40, Chapter 35 and Title 41, Chapter 1, Part 4. by *McCormick, *Brooks K, * Lamberth.").

As indicated above, Rule 35 permits the trial court, upon motion of the defendant filed within 120 days of the order revoking probation, to modify the defendant's sentence. Under that rule, however, the trial court "may reduce a sentence only to one the court could have originally imposed." Tenn. R. Crim. P. 35(b).

No statute or rule, including Code section 39-11-112, permits the trial court to alter the class of the conviction offense following the revocation of probation. Because the trial court exceeded its authority by doing so in this case, we have elected to treat the State's improperly-filed appeal as of right as a petition for the common law writ of certiorari and vacate the order of the trial court modifying the defendant's conviction from a Class E felony with a sentence of two years to a Class A misdemeanor with an 11-month and 29-day sentence.

*Conclusion*

Because the trial court erred by applying the amended version of Code section 39-14-105 following the revocation of the defendant's probation, we vacate the 11-month and 29-day sentence imposed by the trial court and remand the case for proceedings consistent with this opinion.

_____
JAMES CURWOOD WITT, JR., JUDGE